Carter E. COOMER and Kentucky
Unemployment Insurance
Commission, Appellants,

v.

NEW FARMERS NATIONAL BANK OF
GLASGOW, GLASGOW,
Kentucky, Appellee.

Carter E. COOMER and Kentucky
Unemployment Insurance
Commission, Appellants,

v.

NEW FARMERS NATIONAL BANK OF
GLASGOW, GLASGOW,
Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 30, 1981.

Phillip R. Patton, Riherd, Richardson &
Patton, Glasgow, for appellant, Coomer.

Paul F. Fauri, General Counsel, R.
Hughes Walker, Staff Atty., Dept. for Human Resources, Frankfort, for appellant,
Ky. Unemployment Ins. Com'n.

Bruce Barrickman, Richardson, Barrickman & Dickenson, Glasgow, for appellee.

Before COOPER, HOWERTON and
REYNOLDS, JJ.

HOWERTON, Judge.

This is a consolidated appeal from a judgment of the Barren Circuit Court reversing
an order of the Kentucky Unemployment
Insurance Commission which awarded un-

employment benefits to the appellant, Coomer. Both parties essentially argue that the trial court erred in reversing the award of the Commission, because the Commission's findings that Coomer did not voluntarily leave his employment without good cause or that he did not leave to become self-employed are supported by substantial evidence. The Commission also contends that when an employer adopts rules that require an employee to divest himself of substantial assets and business interests, the employee has good cause to quit otherwise suitable work.

The local authority and the referee denied Coomer unemployment benefits and concluded that he left his employment with the appellee bank voluntarily and without good cause. The Commission thereafter reversed the referee and ordered the payment of benefits. On appeal to the circuit court, the decision of the Commission was reversed.

The Commission and the Barren Circuit Court adopted the facts as determined by the referee, and they will be set forth as the essential material facts for the case. They read as follows:

> The claimant was employed as a loan officer for the caption bank for 10 years and 10 months. He also operated his own livestock brokerage business as well as being a partner in a second livestock brokerage business. He owns a 152-acre farm, leases a 140-acre farm, leases a 180-acre farm with his business partner and the two of them own a 52-acre farm. In recent years banking institutions have come under closer scrutiny by regulatory agencies. Because of this the appellee bank's board of directors adopted a code of ethics on September 14, 1978.
>
> After complaints from some of the bank's customers regarding claimant's other business activities the president called him into a meeting on May 18, 1979. Mr. Aldridge expressed his opinion to the claimant that his outside business activities were in violation of the bank's code of ethics. He told the claimant he would have to be a banker or a broker but could

not be both. The claimant was given from Friday until the following Monday to decide what he was going to do. He told Mr. Aldridge that he could not give up his brokerage business and submitted a letter of resignation that day.

■ This Court and the trial court are well aware of our lack of authority to disturb findings of fact by the Commission so long as they are supported by substantial evidence. We do not dispute the facts. The problem we have is with the application of the facts to the law. The argument of both appellants appears to us to have missed the point. We can agree that Coomer left the bank for his own good cause, and that such cause would meet the test as set forth in *Kentucky Unemployment Insurance Commission v. Murphy*, 539 S.W.2d 293 (1976). In that opinion, Kentucky's highest court provided at page 294 that:

> Good cause for voluntarily quitting work exists only when the worker is faced with circumstances so compelling as to leave no reasonable alternative but loss of employment.

The bank's new policies required Coomer to choose between the two occupations, but the better occupation for Coomer turned out to be his farming operations, and that is why he elected to leave the bank's employment. The problem, however, is that the trial court also concluded, and we agree, that Coomer left his employment to become self-employed. KRS 341.370 provides:

> (2) A worker shall be disqualified from receiving benefits or serving a waiting period for the duration of any period of unemployment with respect to which ...
>
> (b) he voluntarily quit his most recent work ... to become self-employed, ...

Coomer was engaged in the cattle brokerage business long before his conflict with the bank and its code of ethics. The business had grown to the point that on the day of his resignation, he informed Mr. Aldridge, the bank president, that he paid more taxes from his brokerage than he

received as salary from his employment with the bank. He therefore chose to be a full-time cattle broker rather than continue as a loan officer in the bank. Had Coomer chosen to stay with the bank, however, he would not have had to liquidate his brokerage business within an immediate time frame. Another bank employee confronted with a similar problem elected to stay with the bank and was given six months to liquidate his outside interests.

KRS 341.350 further requires a claimant to be unemployed in order to receive unemployment benefits. The senior hearing officer for the Commission in his decision aptly stated:

> The question of whether claimant is entitled to benefits as a result of this separation is moot. The claimant is not and has not since May 18, 1979, been unemployed. He is actively engaged in self-employment, and under the conditions set forth in KRS 341.350 he has no entitlement to benefits.

In its reply to the bank's arguments, the Commission contends that a person may work and yet be unemployed for purposes of compensation and yet receive benefits, especially if the extra work is in agricultural endeavors. In support of this argument, the Commission cites the annotation in 65 A.L.R.2d 1182, (1959), and Later Case Service.

■ We agree that as a general rule one is not always precluded from unemployment benefits because he lives on, owns, or operates a farming enterprise as an owner, landlord, tenant, or sharecropper. We would also agree that one's need or lack of it is not a criteria for eligibility for benefits. But, we are not dealing with the typical farmer who works full time during the winter or who manages to operate a small farm on a part-time basis. Here we are dealing with an individual who had a substantial farming operation which could, and after leaving the bank did, occupy his full time. We can only conclude that Coomer would be denied unemployment benefits in most, if not all, jurisdictions. 65 A.L.R.2d, *supra*.

■ It appears to this Court that it would make a farce of the statutes and the legislative intent to permit Coomer to receive unemployment benefits under the circumstances in this case.

The judgment of the trial court is affirmed.

All concur.